*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SAV-TIME, INC.,

Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

Defendant-Appellee.

FOR PUBLICATION
March 10, 2026
11:50 AM

No. 370459
Court of Claims
LC No. 21-000186-MT

Before: RICK, P.J., and MALDONADO and KOROBKIN, JJ.

RICK, P.J.

Plaintiff, Sav-Time, Inc. (Sav-Time), appeals as of right an opinion and order granting summary disposition in favor of defendant, the Department of Treasury (the Department), under MCR 2.116(C)(10) (no genuine issue of material fact), and denying Sav-Time's countermotion for summary disposition under MCR 2.116(C)(10) and MCR 2.116(I)(2) (opposing party entitled to summary disposition). We affirm.

This appeal arises from the Department's audit of Sav-Time's sales, use and withholding (SUW) tax returns for the years 2015 through 2018. We are primarily asked to determine whether the Court of Claims properly determined that Sav-Time failed to properly itemize labor charges in its financial documents and data, and that Sav-Time's documents contained inaccurate and inconsistent dollar amounts in a variety of sales categories. However, because the proper resolution of this case rests largely on the correct interpretation of certain portions of the General Sales Tax Act (GSTA), MCL 205.51 *et seq.*, we will first set forth the relevant statutes and rules before addressing the factual and procedural history of the case.

## I. LEGAL BACKGROUND

As stated, this matter is generally governed by the GSTA. MCL 205.52 of the GSTA provides, in relevant part:

(1) Except as provided in section 2a, there is levied upon and there shall be collected from all persons engaged in the business of making sales at retail, by which ownership of tangible personal property is transferred for consideration, an

annual tax for the privilege of engaging in that business equal to 6% of the gross proceeds of the business, plus the penalty and interest if applicable as provided by law, less deductions allowed by this act.

* * *

(3) Any person engaged in the business of making sales at retail who is at the same time engaged in some other kind of business, occupation, or profession not taxable under this act shall keep books to show separately the transactions used in determining the tax levied by this act. If the person fails to keep separate books, there shall be levied upon him or her the tax provided for in subsection (1) equal to 6% of the entire gross proceeds of both or all of his or her businesses. The taxes levied by this section are a personal obligation of the taxpayer.

For this purpose, "gross proceeds" is defined as "sales price." MCL 205.51(1)(c). In turn, "sales price" is defined as "the total amount of consideration, including cash, credit, property, and services, for which tangible personal property or services are sold, leased, or rented, valued in money, whether received in money or otherwise, and applies to the measure subject to sales tax." MCL 205.51(1)(d). Sales price includes "[c]harges by the seller for any services necessary to complete the sale, other than . . . [l]abor or service charges involved in maintenance and repair work on tangible personal property of others if separately itemized." MCL 205.51(1)(d)(*iii*)(B).

Relatedly, pursuant to Mich Admin Code, R 205.117(3), which was in effect during the 2015 through 2018 tax years:

[p]ersons selling tangible personal property in addition to providing labor or service shall obtain a sales tax license and pay the tax on their sales of tangible personal property, including such property sold in connection with repair work. When both labor and service charges are involved in repair work for others, the retailer shall separately itemize the amount charged for the tangible personal property sold; otherwise, the tax shall apply to the total gross proceeds.[1]

Individuals liable for taxes imposed under the GSTA must "keep in a paper, electronic, or digital format an accurate and complete beginning and annual inventory and purchase records of additions to inventory, complete daily sales records, receipts, invoices, bills of lading, and all pertinent documents in a form the department requires." MCL 205.68(1). Further, under MCL 205.68(4):

(4) If a taxpayer fails to file a return or to maintain or preserve sufficient records as prescribed in this section, or the department has reason to believe that any records maintained or returns filed are inaccurate or incomplete and that additional taxes are due, the department may assess the amount of the tax due from the taxpayer based on an indirect audit procedure or any other information that is available or that may become available to the department. *That assessment is*

---

[1] Rule 205.117 has since been rescinded, see 2023 Mich Reg 15 (August 11, 2023).

-2-

*considered prima facie correct for the purpose of this act and the burden of proof of refuting the assessment is upon the taxpayer.* An indirect audit of a taxpayer under this subsection must be conducted in accordance with 1941 PA 122, MCL 205.1 to 205.31, and the standards published by the department under section 21 of 1941 PA 122, MCL 205.21, and must include all of the following elements:

(a) A review of the taxpayer's books and records. The department may use an indirect method to test the accuracy of the taxpayer's books and records.

(b) Both the credibility of the evidence and the reasonableness of the conclusion must be evaluated before any determination of tax liability is made.

(c) The department may use any method to reconstruct income, deductions, or expenses that is reasonable under the circumstances. The department may use third-party records in the reconstruction. [Emphasis added.]

With respect to an audit by the Department in regard to tax liability, MCL 205.21(1) provides:

If a taxpayer fails or refuses to make a return or payment as required, in whole or in part, or if the department has reason to believe that a return made or payment does not supply sufficient information for an accurate determination of the amount of tax due, the department may obtain information on which to base an assessment of the tax. By its duly authorized agents, the department may examine the books, records, and papers and audit the accounts of a person or any other records pertaining to the tax. A taxpayer who has been audited by the department or its agent or a taxpayer whose books, records, and papers have been examined by the department shall, upon request, be provided a complete copy in printed or electronic format of the complete audit work papers and the audit report of findings. Any audit performed by the department or its duly authorized agents . . . shall be performed in accordance with auditing standards which shall include, but are not limited to, confidentiality, technical training, independence, due professional care, planning, supervision, understanding of the entity audited including internal control and an assessment of risk, audit evidence and documentation, sampling and sampling projections, and elements of the audit report of findings. . . .

"When designing an audit sample, auditors must consider the purpose of the audit procedure and the characteristics of the population from which the sample will be drawn," and "[t]he auditor may use statistical or nonstatistical sampling." Mich Admin Code, R 205.2009(1).[2] The auditor should

_____

[2] Rule 205.2009(6) provides:

Auditors may use either statistical or non-statistical sampling of the audited person's books and records to provide sufficient evidence to form a conclusion about the correct tax liability. Non-statistical sampling includes judgmental samples, random samples, simple random sampling, systematic sampling, and

determine the sampling method on a case-by-case basis, and may "consider the circumstances of the audit, the type of taxpayer entity, and the taxpayer's internal control system." *Id*. "Auditors must select items for the sample in such a way that the auditors can reasonably expect the sample to be representative of the relevant population and likely to provide the auditors with a reasonable basis for conclusions about the population." Rule 205.2009(2).[3] "Auditors must investigate the nature and causes of any deviations or misstatements identified and evaluate their possible effect on the purpose of the audit procedure and on other areas of the audit." Rule 205.2009(4). "If an audited person does not have sufficient records or fails to provide records, the auditor shall determine the best information available and base the estimated tax liability on that information." Rule 205.2009(9).

"[T]he department, after determining the amount of tax due from a taxpayer, shall give notice to the taxpayer of its intent to assess the tax," and "[t]he notice shall include the amount of the tax the department believes the taxpayer owes, the reason for that deficiency, and a statement advising the taxpayer of a right to an informal conference." MCL 205.21(2)(b). And MCL 205.21(2)(c) provides as follows:

> If the taxpayer serves written notice upon the department within 60 days after the taxpayer receives a notice of intent to assess, remits the uncontested portion of the liability, and provides a statement of the contested amounts and an explanation of the dispute, the taxpayer is entitled to an informal conference on the question of liability for the assessment.

"A taxpayer aggrieved by an assessment, decision, or order of the department may appeal the contested portion of the assessment, decision, or order to the tax tribunal within 60 days, or to the court of claims within 90 days after the assessment, decision, or order." MCL 205.22(1).[4] Any "uncontested portion of an assessment, order, or decision shall be paid as a prerequisite to appeal." *Id*. "The assessment, decision, or order of the department, if not appealed in accordance with this section, is final and is not reviewable in any court by mandamus, appeal, or other method of direct or collateral attack." MCL 205.22(4). And "[a]n assessment is final, conclusive, and not subject to further challenge after 90 days after the issuance of the assessment, decision, or order of the department." MCL 205.22(5).

---

cluster sampling or any other sampling method that does not involve statistical evaluation.

[3] "When sampling the same accounts for multiple years, the auditor may combine the accounts into 1 population. The result must be projected by a reasonable method that the auditor determines prior to selecting the sampling units." Rule 205.2009(8).

[4] "A taxpayer or the department may take an appeal by right from a decision of the tax tribunal or the court of claims to the court of appeals. The appeal shall be taken on the record made before the tax tribunal or the court of claims." MCL 205.22(3).

## II. FACTUAL BACKGROUND

Sav-Time operates two oil change and automotive maintenance facilities in Saginaw, Michigan, and claimed significant sales tax exemptions for labor charges associated with its services. The Department's audit of Sav-Time's SUW tax returns for 2015 through 2018 concluded that Sav-Time failed to properly itemize labor charges on its invoices and other financial documents, resulting in the disallowance of claimed exemptions totaling $955,287.[5] The Department also made an upward adjustment of $13,443 to Sav-Time's gross sales, resulting in a total tax liability of $50,350, plus interest.

The audit report stated that "[d]ue to a software change during the audit period . . . . [s]ome reports provided did not have all of the necessary information." The report continued that "[t]he taxpayer has an accounting firm prepare their returns. During the audit period a different accountant was assigned to prepare the monthly and annual return." Further, the report explained that "[t]he taxpayer has used the same store software during the audit period. However, the accounting firm changed their financial software during the audit period." The audit report additionally stated that Sav-Time "creates a sales sheet for their two locations. This sheet breaks down the various types and amounts of each sale. They send this to their accountant and the accountant prepares the monthly return."

The report continued that the review method examined gross sales and allowable deductions relative to exempt services for the tax period at issue. With respect to "gross sales," the auditor reviewed sales invoices, sales reports, and the general ledger, resulting in the upward adjustment of $13,443. With respect to the upward adjustment, the auditor reasoned:

> The taxpayer was inconsistent in their reporting method for gross sales on their monthly and annual SUW returns. According to their SUW returns from 2015-July 2018 the taxpayer did not report sales with tax in gross, except for November 2017. They changed their method to include tax in gross sales in August 2018.

> The auditor reviewed monthly sales reports, financial statements, detail[ed] general ledger reports and federal returns. After reviewing the taxpayer's financial reports it was determined that they were reporting tax on their gross sales. Auditor noted the sales reports were the best representation of sales. There were un-reconcilable differences between the various reports. Adjustments were made for untaxed sales of used oil and unreconcilable differences.

The auditor next examined allowable deductions in the form of exempt services. He ultimately made a series of downward adjustments, which resulted in the elimination of a deduction for exempt services totaling $955,287, a figure that Sav-Time asserted represented labor sales that were not subject to sales tax. The auditor reasoned:

---

[5] Unless otherwise indicated, we have rounded the dollar amounts to the nearest dollar.

The taxpayer invoices their oil changes as part of a lump sum package, with the exception of add-ons as needed to complete the oil change or minor maintenance parts as requested by the customer. The auditor reviewed a batch of sample invoices within the audit period. Within their software they determine a taxable amount for the cost of the tangible personal property used to complete the oil change. The taxpayer reports the remainder of the cost as an exempt service. The tax in their gross sales was also included and reported as a deduction under exempt services. For July 2018 the taxpayer erroneously filed their monthly SUW return for exempt sales as tax included in gross sales. This was carried over to their annual return. The auditor also reviewed invoices for coolant/fluid exchanges and rustproofing. These [are] invoiced the same as the oil changes as one lump sum. *The tangible personal property and labor are not separately itemized on the invoices.* [Emphasis added.]

The auditor disallowed Sav-Time from claiming the exempt services deduction because Sav-Time failed to "separately itemiz[e] the labor on their invoices[.]"

The audit report additionally set forth adjustments with respect to taxes included in gross sales, which were relational to adjustments to either the gross sales or deductions. The report stated that the adjustments were made to taxes included in gross sales. By our calculations, the value of the adjustments totaled $129,577. The auditor then calculated interest through June 15, 2020, but imposed no penalty because "[t]he taxpayer demonstrated reasonable cause by exercising ordinary care and prudence." Finally, the audit report set forth the overall monetary results of the audit, noting a tax liability or assessment of $50,350, plus $7,279 in interest, for a total due of $57,629.

In November 2020, the Department issued a final audit determination that reflected the same liability dollar amounts set forth in the audit report. The Department sent Sav-Time bills and final bills for taxes due, stating an intent to assess the following amounts in outstanding sales tax: $5,680 for 2015; $14,953 for 2016; $15,699 for 2017; and $13,859 for 2018.

Sav-Time requested an informal conference to challenge the results of the audit and sales-tax assessment. In the request, Sav-Time argued:

The audit started September 18, 2019. All requested information was sent to the auditor promptly. Included in the information were duplicate invoices for services rendered. On April 22, 2020, additional duplicate invoices were provided. Unbeknownst to our office, the duplicated invoices did not show the labor cost line. When the auditor completed the audit on June 30, 2020 it came to our attention.

At that time we requested an additional 2 weeks . . . to get actual invoices to the [Department]. We needed the additional time due to the state's Covid-19 restrictions. We were refused. The reason given was we had the 10 months the auditor took to do the audit to get them to the [Department]. Two weeks didn't seem like an unreasonable time since the audit took 10 months. Since then the programmer fixed the duplicate invoices. The actual invoices always stated the non-taxable labor.

We don't have any actual invoices for the audit period, but the duplicate invoices now state the non-taxable labor.

The taxpayer was audited on this issue in the past when invoices were printed by hand. At that time it was being done incorrectly and the taxpayer corrected the manual invoices. When he purchased the current invoicing program, he specifically requested that the invoice state the non-taxable labor which the programmer provided. It seems very unreasonable to think the taxpayer would make the same mistake twice.

As evidence, we can provide current actual invoices by printing 2 at the time of the service and provide the new duplicate invoices on any old invoices.

The duplicate invoices originally provided to the auditor listed an initial sales price and then indicated the "Taxable Amt," which was followed by a listing of the sales tax being charged and the overall charge to be paid by the customer. There was no specific or express itemization for labor charges or labor sales. The new duplicate invoices that Sav-Time wanted the Department to consider listed an initial sales price and then indicated an amount for "Taxable Parts," which was followed by an amount designated for "Non-Taxable Labor" and then the sales tax being charged, concluding with the overall charge to be paid by the customer.

An informal conference was held before a referee in June 2021. The referee recommended upholding the Department's assessment. The referee opined:

Here, [Sav-Time] did not provide sufficient and accurate records. The Department utilized the best information available when auditing [Sav-Time] and determining its tax liability. [Sav-Time] did not meet the burden of proving adjustments are needed. The Intents to Assess were lawfully imposed against [Sav-Time] and should be upheld as originally determined.

In July 2021, the Department issued a decision and order of determination, accepting and adopting the referee's recommendation.

In September 2021, Sav-Time filed suit in the Court of Claims, challenging the validity of the assessment and the Department's audit methodology. During the proceedings, the Department filed a motion for summary disposition under MCR 2.116(C)(4) (lack of subject-matter jurisdiction) and (C)(10). Relevant to this appeal,[6] the Department argued that summary disposition was proper under MCR 2.116(C)(10) because no genuine issue of material fact existed regarding the validity of its decision to adjust Sav-Time's gross sales, exempt services for labor,

---

[6] As will be discussed further, the Court of Claims granted the Department's motion under MCR 2.116(C)(10). Although the issue of subject-matter jurisdiction may be raised at any time, *Maxwell v Dep't of Environmental Quality*, 264 Mich App 567, 574; 692 NW2d 68 (2004), the Department has not renewed its jurisdictional argument on appeal. We thus focus our attention on the arguments made in relation to MCR 2.116(C)(10), and the Court's decision to grant the motion under that subsection.

and tax in gross. The Department maintained that Sav-Time failed to separately itemize charges for labor and tangible personal property as required by MCL 205.51(1)(d)(*iii*)(B) and Rule 205.117(3) in order to support the claimed sales tax exemption. The Department explained that Sav-Time's invoices during the audit period did not separately itemize labor charges, and the amounts reported as exempt services in Sav-Time's SUW returns were not supported by reliable documentation. The Department further contended that Sav-Time's SUW returns were not filed accurately, with irreconcilable differences between various reports, and that Sav-Time did not contest the Department's adjustment to its gross sales. Ultimately, the Department argued that, because Sav-Time failed to comply with statutory requirements and did not provide sufficient and accurate records, no genuine issue of material fact existed regarding the correctness of the assessments, rendering summary disposition proper under MCR 2.116(C)(10).

Sav-Time filed a combined response to the Department's motion for summary disposition and a countermotion for summary disposition under MCR 2.116(C)(10) and (I)(2). Sav-Time argued that the Department ignored data and documents provided during the audit, and that the auditor's workpaper adjustments were "unproven, not in evidence, and hearsay." Sav-Time disputed the claim that it used an inconsistent method of reporting gross sales. It demonstrated the accuracy of its accounting by explaining that its 2018 Annual Sales Tax filing reconciled with its financial statements. Sav-Time pointed out that its reported gross sales of $1,098,136.53 included $48,725.96 in sales tax, and that the reported gross sales number matched Sav-Time's income statement total revenue of $1,049,291.52, with minimal variance. It thus argued that its accounting records and sales-tax report filings were accurate and consistent.

Sav-Time additionally argued that separately itemized labor charges to change oil and perform maintenance work were exempt from sales tax, and that the operation of its business indisputably entailed a labor component, the cost of which Sav-Time's customers paid. Sav-Time contended that its customer sales data and invoices were permanently maintained as "read only" in its computer system. Attached as an exhibit to Sav-Time's motion was a sample duplicate-sales invoice printed from the "read only" data that Sav-Time had submitted during the audit. Sav-Time asserted that the document showed the sales price, the taxable amount, the sales tax, the total bill to be paid by the customer, and the nontaxable labor.[7] Sav-Time also submitted a second duplicate invoice covering the same transaction, which Sav-Time had sought to present after the audit concluded, and which expressly had a line in the bill that referenced a charge for "Non-Taxable Labor." Sav-Time maintained that the invoices complied with the "itemization" requirement of MCL 205.51(d).

Sav-Time further contended that Rule 205.117(3) compelled itemization only with regard to the amount charged for tangible personal property sold to customers, even when labor and service charges are involved in repair work. Sav-Time argued that it originally focused on providing the auditor with business documents showing the sale of personal property because the nature of the audit was to identify whether Sav-Time paid all of the sales tax due on those sales.

---

[7] Contrary to this assertion, our review of the document indicates that no specific reference was made to nontaxable labor. Instead, it appears that Sav-Time simply calculated the purported nontaxable labor by subtracting the taxable amount from the sales price.

Sav-Time contended that the Department's auditor arbitrarily rejected invoices showing itemized nontaxable labor. Sav-Time thus asserted that the auditor's distortion of the facts, his failure to fully disclose them, and the existence of a factual dispute, called for denying the Department's motion for summary disposition.

The Court of Claims issued a written opinion and order granting the Department's motion for summary disposition and denying Sav-Time's countermotion. The Court of Claims found that it had subject-matter jurisdiction, and granted summary disposition to the Department under MCR 2.116(C)(10), concluding that Sav-Time failed to separately itemize labor charges as required by statute and that inconsistencies in Sav-Time's reporting methods supported the Department's assessment.

Sav-Time moved for reconsideration, arguing that (1) its electronic digital documents clearly separated taxable personal property from nontaxable labor; (2) the Court of Claims misconstrued and misapplied MCL 205.68(4) and Rules 205.2009(9) and 205.117; (3) the audit report lacked a supporting affidavit from the person who prepared the report attesting to its accuracy and truthfulness, rendering the report mere hearsay; (4) Sav-Time was denied due process; and (5) the court improperly decided factual disputes. The Court of Claims denied the motion because Sav-Time failed to show that the Court made a palpable error or that a different outcome was required. This appeal followed.

## III. ANALYSIS

## A. STANDARDS OF REVIEW

This Court reviews de novo summary disposition rulings issued by the Court of Claims in actions brought against the Treasury Department. *Maple Manor Rehab Ctr, LLC v Dep't of Treasury*, 333 Mich App 154, 162; 958 NW2d 894 (2020). The Court of Claims granted the Department's motion for summary disposition in this matter under MCR 2.116(C)(10). Motions brought under MCR 2.116(C)(10) "test the *factual sufficiency* of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). In reviewing a motion under MCR 2.116(C)(10), the court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. The motion "may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). Conversely, "[a] trial court may award summary disposition to the opposing party under MCR 2.116(I)(2) if it determines that the opposing party, rather than the moving party, is entitled to judgment." *Hambley v Ottawa Co*, 348 Mich App 585, 591-592; 19 NW3d 411 (2023).

We review de novo questions of statutory interpretation, as well as questions regarding the interpretation of administrative rules and regulations. *Delmotte v Secretary of State*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 370273); slip op at 2. In *Slis v Michigan*, 332 Mich App 312, 335-336; 956 NW2d 569 (2020), this Court recited the well-established principles that guide statutory construction:

This Court's role in construing statutory language is to discern and ascertain the intent of the Legislature, which may reasonably be inferred from the words in

the statute. We must focus our analysis on the express language of the statute because it offers the most reliable evidence of legislative intent. When statutory language is clear and unambiguous, we must apply the statute as written. A court is not permitted to read anything into an unambiguous statute that is not within the manifest intent of the Legislature. Furthermore, this Court may not rewrite the plain statutory language or substitute its own policy decisions for those decisions already made by the Legislature.

Judicial construction of a statute is only permitted when statutory language is ambiguous. A statute is ambiguous when an irreconcilable conflict exists between statutory provisions or when a statute is equally susceptible to more than one meaning. When faced with two alternative reasonable interpretations of a word in a statute, we should give effect to the interpretation that more faithfully advances the legislative purpose behind the statute. [Quotation marks and citations omitted.]

Additionally, "[w]hether due process has been afforded is a constitutional issue that is reviewed de novo." *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013).

## B. EVIDENTIARY CHALLENGES

Sav-Time first argues that the Court of Claims erred by relying on the Department's audit report and the affidavit of audit supervisor Elaine Van Buskirk, contending that these materials constituted inadmissible hearsay and lacked proper foundation. Sav-Time also contends that the audit report was prepared in anticipation of the litigation in this matter. We disagree.

As an initial matter, we note that the evidentiary arguments that Sav-Time presents on appeal were first raised in Sav-Time's brief in support of its motion for reconsideration. To preserve an issue for appeal, "the party asserting error must demonstrate that the issue was raised in the trial court." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023). However, "[a]s a general rule, an issue is not preserved if it is raised for the first time in a motion for reconsideration in the trial court." *George v Allstate Ins Co*, 329 Mich App 448, 454; 942 NW2d 628 (2019). Michigan generally follows the "raise or waive" rule of appellate review. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). Under the "raise or waive" rule, "[i]f a litigant does not raise an issue in the trial court, this Court has no obligation to consider the issue." *Tolas Oil*, 347 Mich App at 289. Based on the foregoing, Sav-Time has waived these issues on appeal by failing to properly preserve them. *Id*. However, we exercise our discretion to overlook the preservation requirements in this case because the matter "involves a question of law and the facts necessary for its resolution have been presented." *Id*. (quotation marks and citations omitted).

Brian Herek was the auditor who prepared the report regarding Sav-Time's SUW tax returns. Rather than present an affidavit from Herek himself, the Department offered an affidavit by Elaine Van Buskirk as foundation for the Court of Claims to allow the Department to introduce Herek's audit report and other exhibits in support of their summary disposition motion. The record indicates that the Department submitted Van Buskirk's affidavit because Herek had left his job as

an auditor. Sav-Time points out that Van Buskirk did not prepare the audit report or exhibits herself, and contends that this creates hearsay and authentication issues.

Hearsay is "a statement that . . . a party offers in evidence to prove the truth of the matter asserted in the statement." MRE 801(c)(2). Under MRE 801 and 802, hearsay is generally inadmissible unless an exception applies. Contrary to Sav-Time's argument, the audit report and Van Buskirk's affidavit were not hearsay, and were submitted merely to establish the auditor's findings, which were eventually adopted by the Department. For example, the auditor found that there were inconsistencies in Sav-Time's accounting and reporting methods, but the submission of those findings was not evidence proving those findings; rather, those findings needed to be established by evidence demonstrating the inconsistencies. To the extent that the audit report and schedules included financial information, statements regarding that financial information in the report and affidavit simply showed the basis of Herek's reasoning and were not submitted to prove the truth of that information. The information was therefore not hearsay, and we need not explore the hearsay exceptions listed in MRE 803 and 804.

The argument that Van Buskirk's affidavit lacked sufficient foundation for authentication is also flawed. MRE 901(a) requires only that "the proponent . . . produce evidence sufficient to support a finding that the item is what its proponent claims it is." As a departmental employee who specifically supervised Herek's work and was familiar with the Sav-Time audit report, Van Buskirk was qualified to authenticate the audit report, even though she did not personally conduct the audit. Van Buskirk's testimony would be sufficient to support a finding that the audit report and schedules were exactly what the proponent Department claimed them to be.

Additionally, under MRE 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony . . . ." Although Van Buskirk did not perform the audit herself, her position as Herek's supervisor, her knowledge of the audit procedure, and her familiarity with the contents of the audit report provided a sufficient basis to conclude that Van Buskirk had personal knowledge of the Sav-Time audit and the information contained in the report that she shared in her affidavit.

Finally, the audit report and schedules were clearly not prepared in anticipation of litigation. In *Attorney General v John A Biewer Co, Inc*, 140 Mich App 1, 17; 363 NW2d 712 (1985), this Court stated:

> [A]s a general rule, documents prepared for use in litigation are not admissible as records of regularly conducted activities. The justification for the business records exception is that a record kept in the regular course of business is trustworthy. However, where the record is prepared for the purpose of litigation, the record does not have the inherent trustworthiness that a record kept in the regular course of business does.

Here, the auditor's report was prepared pursuant to a standard sales-tax audit conducted by the Department. Sav-Time's argument thus fails.

## C. THE DEPARTMENT'S AUDIT

### 1. RULE 205.117

Sav-Time first contends that the Department ignored Rule 205.117 in favor of the more exacting standard set forth in the GSTA. We disagree and find that Sav-Time is not entitled to relief on this issue.

As part of its business, Sav-Time engages in retail sales, chiefly of oil and oil filters, while also performing oil changes. The retail sale of oil and oil filters is subject to a 6% sales tax, but the labor involved in performing oil changes generates no sales tax. See MCL 205.52(1) and (3). Under the GSTA, businesses are required to "keep books to show separately the transactions used in determining the tax levied . . . ." MCL 205.52(3). Moreover, the sales tax was levied on "gross proceeds," which includes charges for services, except for labor or service charges "if separately itemized." MCL 205.51(1)(c), (d), and (d)(*iii*)(B). Thus, under the GSTA, Sav-Time was required to separately itemize "labor or service charges involved in maintenance and repair work on tangible personal property," MCL 205.51(1)(d)(*iii*)(B), to avoid paying a 6% sales tax on the labor sales.

Sav-Time argues that it need only have satisfied former Rule 205.117(3), which required businesses to "separately itemize the amount charged for the tangible personal property sold; otherwise, the tax shall apply to the total gross proceeds." Unlike MCL 205.51(1)(d)(*iii*)(B), which requires separate itemization of labor charges, Rule 205.117(3) only required itemization of the sales of tangible personal property to avoid sales tax on labor charges. It is well settled "that agencies are bound to follow their own duly promulgated rules." *Grass Lake Improvement Bd v Dep't of Environmental Quality*, 316 Mich App 356, 366-367; 891 NW2d 884 (2016). That said, while "an agency's interpretation of the statute it administers is entitled to respectful consideration, it cannot conflict with the intent of the Legislature as expressed in the language of the statute." *Brightmoore Gardens, LLC v Marijuana Regulatory Agency*, 337 Mich App 149, 160; 975 NW2d 52 (2021). Indeed, an administrative rule that conflicts with a statute is invalid, as agencies are not empowered to change laws enacted by the Legislature. *Id*. at 160-161. Thus, the GSTA controls in this matter, and Sav-Time was required to demonstrate that labor sales or charges were separately itemized in its financial documents or records in order to qualify for an exemption from sales tax on the labor sales.

Even if we were to agree with Sav-Time's position that the Department "ignored" its own duly promulgated Rule 205.117, the invoices that Sav-Time submitted to the auditor do not clearly itemize the cost of tangible personal property required by Rule 205.1173(3). Each contains a line called "Taxable Amount," but it is unclear whether that line is intended to be the line itemization for tangible personal property in accordance with Rule 205.117(3). Only the invoices submitted to the Department after the audit was complete contain separate lines for "Taxable Parts," i.e., tangible personal property, and "Non-Taxable Labor." But this is immaterial because, as discussed below, the Department was not obligated to review the postaudit invoices. Sav-Time failed to comply with the directive to itemize tangible personal property under Rule 205.117(3). For these reasons, Sav-Time's argument fails.

## 2. MCL 205.68(4) AND THE PRESUMPTION OF CORRECTNESS

Sav-Time next contends that none of MCL 205.68(4)'s conditions precedent were satisfied, and that the trial court thus had no basis to apply the prima facie presumption of correctness in this case. We disagree.

This argument is unpreserved because Sav-Time raised it for the first time in its motion for reconsideration. *George*, 329 Mich App at 454. Sav-Time has waived the argument on appeal. *Tolas Oil*, 347 Mich App at 289. We nevertheless exercise our discretion to address it because consideration is necessary for a proper determination of the case. *Id.*

Under MCL 205.68(4),

> If a taxpayer fails to file a return or to maintain or preserve sufficient records as prescribed in this section, or the department has reason to believe that any records maintained or returns filed are inaccurate or incomplete and that additional taxes are due, the department may assess the amount of the tax due from the taxpayer based on an indirect audit procedure or any other information that is available or that may become available to the department.

MCL 205.68(4) requires at least one of the conditions precedent—failure to file a return, failure to maintain or preserve sufficient records, or a belief by the Department that records or returns are inaccurate or incomplete and that additional taxes are due—be satisfied in order for the Department to assess taxes on the basis of an indirect audit or any other available information. Additionally, an "assessment is considered prima facie correct for the purpose of [the GSTA] and the burden of proof of refuting the assessment is upon the taxpayer." MCL 205.68(4).

The first round of duplicate invoices submitted to the Department during the audit period, standing alone, revealed problems with accuracy and completeness connected to the labor-based exemptions claimed in the sales-tax returns because labor sales were not properly itemized. Moreover, the record is replete with evidence of inaccuracies and inconsistencies in Sav-Time's financial documents. Thus, the documentation originally submitted to the auditor gave the Department reason to believe that Sav-Time's records, or the returns it filed, were inaccurate and incomplete. Consequently, the Department's tax assessments were "prima facie correct," MCL 205.68(4), and Sav-Time had the burden of refuting them.

## 3. MCL 2.116(C)(10)

Sav-Time next contends that the Court of Claims failed to view the evidence in the light most favorable to the nonmoving party as required by MCR 2.116(C)(10). Sav-Time maintains that the Court of Claims instead opted to overlook evidence showing that Sav-Time properly itemized labor charges and that its records were consistent and accurate. We disagree.

First, the documentation Sav-Time submitted to the Department during the audit period did not separately itemize labor charges as required by the GSTA.[8] As stated, our review of the sample invoice indicates that no specific reference was made to nontaxable labor; instead, it appears that Sav-Time simply calculated the purported nontaxable labor by subtracting the taxable amount from the sales price. After the audit was completed, Sav-Time attempted to introduce computer-generated invoices purporting to show the nontaxable labor charges. But Sav-Time's general manager, David Wojewoda, averred that "software people" added the nontaxable labor line to invoices after the audit, along with tax columns in description boxes. This admission directly contradicts Sav-Time's assertion that labor sales were properly itemized during the relevant tax period, rather than added in after the fact in order to comply with the GSTA. Moreover, even Sav-Time's computer system data did not expressly track "labor" sales, but rather tracked "nontaxable sales," meaning that to determine labor sales, one had to subtract the taxable amounts from the gross totals. This calculation method fell short of the separate itemization requirement, as it did not provide the direct and express reference to labor sales necessary for statutory compliance. See MCL 205.51(1)(d)(*iii*)(B).

Sav-Time's reliance on generic "nontaxable" sales classifications was insufficient to meet the itemization requirements. The GSTA provides numerous bases for sales tax exemptions, and merely labeling sales as "nontaxable" without specific identification as labor sales creates ambiguity and fails to satisfy the statutory requirement for separate itemization. Its failure to provide proper documentation to the auditor, combined with the contradictory nature of its postaudit submissions and the generic nature of its "nontaxable" classifications, underscores how Sav-Time failed to meet its burden to overcome the prima facie correctness of the Department's tax assessments. No genuine issue of fact exists to show that Sav-Time's records were adequately itemized in accordance with the GSTA.

Sav-Time nevertheless argues that the Department arbitrarily rejected the late-filed invoices that separately itemized labor charges. However, Sav-Time points to no statute, administrative rule, or case law that imposes a legal duty on the Department to review postaudit submissions. MCL 205.68(1) specifically states that taxpayers must maintain accurate and complete records in paper, electronic, or digital format, including complete daily sales records, receipts, invoices, and all pertinent documents. When taxpayers fail to provide adequate records during the designated audit period, the Department is authorized to proceed with its assessment based on available information. MCL 205.68(4). Here, the Department conducted its audit according to established procedures and statutory requirements. When Sav-Time failed to provide adequate documentation, the Department properly proceeded with its audit assessment based on the available information. The GSTA does not require the Department to consider evidence submitted after the audit's completion, particularly when Sav-Time had ample opportunity to present such evidence during the designated audit period.

Additionally, Sav-Time failed to submit accurate and consistent records to the Department. Sav-Time's federal returns, sales reports, financial statements, general ledgers, and SUW returns

---

[8] And as earlier noted, the documentation also failed to properly itemize taxable tangible property under Rule 205.117(3).

reflected different gross sales values, creating irreconcilable differences that the Department was forced to address through adjustments. Significantly, Sav-Time's accountant, Tiffany Fortier, confirmed during her deposition that sales reports were used to complete the monthly SUW returns, yet those very reports contained the inconsistencies that necessitated the Department's adjustments. While Sav-Time's sales reports showed that reported gross sales included sales taxes for the period at issue, the SUW returns from 2015 through July 2018 did not consistently report sales with tax in gross, with the sole exception of November 2017. The company changed its method to include tax in gross sales in August 2018, but failed to report tax on gross sales between January and June 2018.

Furthermore, in July 2018, Sav-Time erroneously filed its SUW return reporting nothing for exempt services while simultaneously reporting exempt services as tax included in gross sales, an error that carried over to the 2018 annual return. Even Sav-Time's attempt to demonstrate record accuracy through its 2018 SUW worksheet fails to support its position. Sav-Time conceded that there is a 1% difference between the worksheet and its other records. This admission of inaccuracy, while minimal, demonstrates that Sav-Time's records failed to meet the statutory requirement for accurate and complete recordkeeping. Accordingly, the evidence overwhelmingly demonstrates that no genuine issue of material fact existed regarding the accuracy and consistency of Sav-Time's records throughout the audit period.

Overall, Sav-Time presents nothing compelling to show that the Court of Claims neglected to properly consider the documentary evidence submitted by both parties, or that it reached an incorrect result based on that evidence. The opinion issued by the Court of Claims in this matter demonstrates that it properly applied the summary disposition standard by evaluating the evidence submitted and determining whether Sav-Time's evidence created a genuine issue of material fact. *El-Khalil*, 504 Mich at 160; see also *Campbell v Kovich*, 273 Mich App 227, 229; 731 NW2d 112 (2006) (stating that, in response to a motion under MCR 2.116(C)(10), the nonmoving party may not "rest on mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial"). The mere fact that Sav-Time failed to establish a genuine issue of material fact does not mean that the Court of Claims did not properly apply the (C)(10) standard. Sav-Time's argument to the contrary is unsupported by the record.

## D. DUE PROCESS

Finally, Sav-Time argues that its procedural due-process rights were violated when the Court of Claims elected to grant summary disposition to the Department. Essentially, Sav-Time contends that this case should have instead gone to trial. We disagree.

Sav-Time first raised the due-process argument in its motion for reconsideration, which would typically render the argument unpreserved and waived. See *George*, 329 Mich App at 454; *Tolas Oil*, 347 Mich App at 289. However, we again exercise our discretion to address the issue because it "involves a question of law and the facts necessary for its resolution have been presented." *Tolas Oil*, 347 Mich App at 289 (quotation marks and citations omitted).

Under the Fourteenth Amendment to the United States Constitution, a state may not "deprive any person of life, liberty, or property, without due process of law." See also Const 1963,

art 1, § 17. "Due process is a flexible concept, the essence of which requires fundamental fairness." *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009). Minimally, due process mandates notice and an opportunity to be heard before the deprivation of life, liberty, or property by adjudication. *Id.* Due process requires the government to provide notice that is reasonably calculated to apprise an interested party of the pendency of an action and afford him or her the opportunity to present objections. *Id.* "To comport with these procedural safeguards, the opportunity to be heard must be granted at a meaningful time and in a meaningful manner." *Id.* (quotation marks and citations omitted).

Sav-Time contends that it was deprived of an opportunity to be heard because the Court of Claims disposed of the case via summary disposition, rather than allowing the matter to go to trial. Contrary to this assertion, nothing in the record suggests that Sav-Time was deprived of notice of any proceeding or an opportunity to be heard before the Court of Claims ruled on the motions for summary disposition. Sav-Time's argument fundamentally misconstrues the nature of summary disposition proceedings. The due-process requirement of notice and opportunity to be heard does not guarantee a trial on the merits when no genuine issues of material fact exist. See MCR 2.116(C)(10).

Sav-Time also makes a cursory argument that, in light of the affidavits of Wojewoda and Fortier, the trial court erred by not granting Sav-Time's motion for summary disposition. However, those affidavits provided no basis to grant summary disposition to Sav-Time in light of the conflicting evidence presented by the Department, including Wojewoda's and Fortier's own deposition testimony. A party cannot create a question of fact by submitting an affidavit that directly contradicts previous deposition testimony. *Bakeman v Citizens Ins Co of the Midwest*, 344 Mich App 66, 76-77; 998 NW2d 743 (2022). Sav-Time is not entitled to relief.

Affirmed.

/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado
/s/ Daniel S. Korobkin